Curia, per

Whitner, J.
This is, in fact, a contest between two judgment creditors, for moneys in the hands of a sheriff, arising from sales made of property of their debtor, in the district in which the debtor resided. The question turns on the construction of the A. A. passed in 1849, entitled “ An Act to amend the law in relation to the lien of judgments.”
The senior judgment had been obtained by confession, entered up and execution lodged, before the Act, in another district than that in which the debtor resided.
The creditor urging the present motion obtained and entered tip his judgment and lodged his execution, subsequent to the Act, and in the district in which the debtor resided, and this was done eight days before the senior execution was transferred and lodged with the sheriff in question.
The Act limits the lien of judgments and executions, whether obtained by confession or otherwise, as against other creditors and purchasers for valuable consideration, to the district where the judgment is first entered and execution lodged, until an execution issued thereon be lodged in the proper office in the district wherein such party (debtor) usually resides, at the time when such judgment was obtained.
The necessity and wisdom of the Act is unquestioned. The liens created by these secret judgments in favor of some creditors, by reason of their concealment operated hardly on others; and their entry alone in other districts than the one in which the debtor resided, his whole property being thereby bound, was productive of much evil.
The operation of the Act will be beneficial, and care should be taken to give it full effect; but caution is likewise enjoined as to its proper construction, because of the large amounts secured in judgments obtained before its passage.
*571 Doubtless the Act has already called in most of the executions from other districts, and, as a further preventive, it is to be regretted that the Legislature did not require this to be done by a given day. An adjustment of the relative liens of judgments, further sales of the property of debtors, and the disbursement of the' proceeds, remains to be made, in very many cases, as amongst executions, against the same debtor, lodged in different districts throughout the State.
ing judgments, obtained and enterqjiun.pi in which the debtor resided, and^niwfuch exec\ The present motion claims that the Act applies to ail judgments and executions in existence at its ratification, and demands the conclusion that, from and ¿y,j|s_pq.ssage, all exist-jstriHs than those pfe had not been already transferred, were linffteffin ^i|J^s|thereby to the property only in such district - írttiis be the correct construction, its further efifect.w©uld3be,4o^iv$ instanta- . , % Aa IJP -33 .1 . . . taneous preference, m a large cm?s of cases, to jKmor judg-cm¡?s of cases, ments, as well then existing as subsequen-tlsy^-^iBtamed; that the lien, which existed on the 19th day of December, 1849, in favor of a senior judgment, was in a day and in a moment of that day, by legislative enactment, limited and restrained, and in many cases postponed, in favor of the junior judgment creditor or subsequent purchaser, growing often out of merely accidental circumstances, as an inspection of the terms of the Act on this reading will readily suggest.
Whether it was competent for the Legislature thus to change, abridge, or even virtually destroy, existing securities, admits of grave question, but we do not think the terms of the Act lead to its consideration. Certainly the rule is, that statutes should be so construed as never to make them retrospect beyond their commencement. Bac. Abr. Statute, C; 1 Bl. Com. 45. Laws seeking to act on past transactions, would invariably work injustice, and Courts are bound so to interpret, if possible, as that wrong will not be done to any.
Looking to the terms of the Act, there are no words which refer to the past necessarily — all may be sensibly construed *572 without invading the general principle. In fact, by its very terms, it looks to what is to be done in the future, by its provision “ from and after the passing of this Act.” It is true, the general words are used that “ no judgment shall have lien,” &c. — but, taken in connection with the general rule of construction, and the consequences that would result, the true reading is rather that no judgment had “ from and after the passing of this Act,” “ shall have lien,” &c.
From other legislation, and the ruling of other Courts, as well as our own, in other cases, we are confirmed in this construction,.
In regulating the lien of mortgages, before the Legislature would interfere with liens existing at the time it was proposed the Act should go into effect, creditors holding these liens were' specifically advertised, and a further and ample day was given to secure and preserve their priority. (Act 1843, 11 Stat. 256.)
In Co. Litt. 360, (a) and in an English case of Gilmore vs. Shuter, (2 Mod. 310, Jones’ Rep. 308,) the rule observed in the construction of Stat. 29 Car. 2, c. 3, is the same as that now adopted. In our Act of 1847, (11 Stat. 433,) it was enacted, “ that from and after the passing of this Act, any execution, lawfully issued by any magistrate of this State, may be levied at any time within four years from the date.” Yet this has been held on the same principle to refer only to magistrates’s executions issued after the Act.
We are of opinion that the Judge correctly ruled on the circuit, and appellant’s motion is, therefore, refused.
O’Neall, EvaNs. Frost and Withers, JJ. concurred.

Motion refused.